# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

RENESHA TOMLIN,

     Plaintiff,

vs.                                   No. CIV 24-1163 JB/GBW

STATE OF NEW MEXICO,
MICHELLE LUJAN GRISHAM, SUSANNA MARTINEZ
BERNALILLO COUNTY, PETER TASSO,
JOHN E. BROWN JUVENILE JUSTICE CENTER
MELORY HARPER, ELIZABETH HAHN
ANDREA GONZALEZ, ANA FOX, NICOLE MAYER
ALYSSE HODGINS, DANA OSKINS
BRIANNA CHAVEZ, HELEN SMITH
LINDA JOHNSON-HOPKINS, MELANIE HUBKA,
and STATE BAR OF NEW MEXICO

     Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) Defendants' Bernalillo County and John

E. Brown Juvenile Justice Center's Motion to Dismiss Plaintiff's Complaint, filed November 21,

2024 (Doc. 5)("County MTD"); (ii) Defendants' Motion to Dismiss, filed November 22, 2024

(Doc. 8)("State/CYFD MTD"); (iii) Defendant State Bar of New Mexico's Renewed Motion to

Dismiss, filed November 27, 2024 (Doc. 9)("State Bar MTD")[1]; (iv) Defendant Han's[2] Motion to

Dismiss, filed August, 2025 (Doc. 42)("Han MTD"); (v) Plaintiff's Reply to Order to Show Cause

---

[1] Defendant State Bar files the original MTD in the Second Judicial District of New Mexico, on November 15, 2024. See State Bar MTD at 1. State Bar fully adopts and incorporates the original MTD in the renewed MTD filed in federal court and attaches the MTD as Exhibit A. See State Bar MTD at 1. The Court will refer to State Bar's renewed MTD as "State Bar MTD" for purposes of this Memorandum, Opinion, and Order.

[2] Defendant Han's name is misspelled as "Hahn" in the docket and several pleading documents. In her motion to dismiss, she spells her name as "Han." Accordingly, the Court will use that spelling.

and Motion for Alternative Service & Leave to Amend Complaint, filed March 13, 2025 (Doc. 30)("Motion to Amend"); and (vi) Plaintiff's Motion to Bifurcate Federal Constitutional Claims from State Claims, filed January 24, 2025 (Doc. 20)("Motion to Bifurcate").  Having carefully reviewed the record and applicable authority pursuant to 28 U.S.C. § 1915A and rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court concludes that Tomlin has not stated a cognizable federal claim.  Accordingly, the Court: (i) grants the County MTD; (ii) grants the State/CYFD MTD ; (iii) grants the State Bar MTD; (iv) grants the Han MTD; (v) denies the Motion to Amend, insofar as it requests leave to amend Plaintiff Renesha Tomlin's Civil Complaint, filed October 9, 2025 (Doc. 1-1)("Complaint"); and (vi) denies the Motion to Bifurcate.

## FACTUAL BACKGROUND

Tomlin brings claims under the New Mexico Civil Rights Act, N.M. §§ 41-4A-1 to -13 ("NMCRA"); the New Mexico Torts Claims Act, N.M. §§ 41-4-1 to -30 ("NMTCA"); 42 U.S.C § 1983; 42 U.S.C.§ 1985; the New Mexico Religious Freedom Restoration Act, N.M. §§ 28-22-1 to -5 ("NMRFRA"); and common-law claims of gross negligence, legal malpractice, and breach of fiduciary duties.  See Complaint ¶¶ 1-45, at 53-85.  She also appears to assert claims under the New Mexico Code of Judicial Conduct, Complaint ¶¶ 14-17, at 55-56; Code of Judicial Conduct, 21-002, The Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. 96 ("RICO"), and Rule 1-060(B) of the New Mexico Rules Annotated ("NMRA").  Complaint ¶¶ 1-45, at 55-57, 68, and 84-85.[3]  Tomlin brings these claims against Defendants State of New Mexico, Bernalillo

---

[3] Tomlin's Complaint is disorganized and confusing.  While Tomlin numbers and lists some of her causes of action, she pleads several additional claims.  Additionally, it is not always clear which claim is being brought against which Defendant.  The Court addresses all her claims, but the Complaint is reminiscent of a "shotgun pleading" -- a recitation of an extended factual narrative followed by pleading numerous claims without adequately specifying which facts apply

County, The John E. Brown Juvenile Justice Center ("Justice Center"), the State Bar of New Mexico, Governor Michelle Lujan Grisham, Former Governor Susana Martinez, several employees of the New Mexico Children Youth and Families Department ("CYFD") (Brianna Chavez, Ana Fox, Andrea Gonzalez, Melory Harper, Alysse Hodgins, Nicole Mayer, and Dana Oskins), Elizabeth Han (Tomlin's former attorney), Peter Tasso (her children's guardian ad litem), Melanie Hubka (her children's former foster mother and current adoptive mother), Linda Johnson-Hopkins (grandmother of Tomlin's first child), and Helen Smith, the sister of Linda Johnson-Hopkins.  See Complaint ¶¶ 1-18, at 3-6.

Tomlin alleges that the Defendants violate her civil rights by wrongfully separating her from her children and terminating her parental rights.  See generally Complaint ¶¶ 1-154, at 3-52. The factual allegations of these claims, which are assumed true for the purposes of the MTDs, are as follows.  Beginning in April, 2013, CYFD investigated Tomlin after Defendants Linda Johnson-Hopkins and Helen Smith made false allegations of child abuse and neglect against Tomlin. See Complaint ¶¶ 1-11, at 33-34.  CYFD continues to send officials into Tomlin's home to conduct further investigations despite telling Tomlin that "everything was in order" and that "there would be no further investigations."  Complaint ¶ 13, at 35.  Gonzalez, a CYFD investigator, coerces Tomlin into relinquishing her custody rights to Johnson-Hopkin's sister, and the children are placed in foster care three weeks later.  See Complaint ¶¶ 22-28, at 36.  CYFD continues to harass Tomlin and imposes burdensome demands such as daily drug testing, and restricted visitation rights, despite Tomlin's completion of the requisite drug treatment program and parenting classes. See Complaint ¶¶ 29-57, at 37-39.  Tomlin's children were briefly returned to her care in March,

---

to which claims and which parties.  Fawley v. Lucero, 2023 U.S. App. LEXIS 5994, at *2 (10th Cir. March 14, 2023)(unpublished).  It violates rule 8. See Mann v. Boatright, 477 F.3d 1140, 1148 (10th Cir. 2007).

2014, but were removed again on April 30, 2014. <u>See</u> Complaint ¶¶ 96-112, at 43-45. Her parental rights were terminated in 2016. <u>See</u> Complaint ¶ 144, at 50. From 2016 to 2022, Tomlin tried to secure legal aid, wrote to legislators and elected representatives, and filed complaints with various state oversight agencies. Her attempts to obtain assistance, however, were unsuccessful. <u>See</u> Complaint ¶¶ 151-54, at 51.

<u>**PROCEDURAL BACKGROUND**</u>

Tomlin files her Complaint in State court on October 9, 2024, alleging that, through false statements, harassment, and other tortious conduct, the Defendants conspire to deprive Tomlin of her rights to familial association, equal protection, and due process. <u>See</u> Complaint ¶¶ 26-33, at 57-63. Tomlin also alleges that the removal of her children from her custody and the subsequent demand that she pay child support constitutes a substantial burden on her religious exercise without a compelling state interest in violation of NMRFRA. <u>See</u> Complaint ¶¶ 1-14, at 75-76. Finally, Tomlin alleges that Han is negligent in her legal representation of Tomlin in her custody proceedings and seeks damages for malpractice. <u>See</u> Complaint ¶¶ 1-8, at 78-83.

The State/CYFD Defendants remove the case to federal court on November 15, 2024. <u>See</u> Notice of Removal at 1. On November 21, 2024, Bernalillo County and Justice Center files their MTD. <u>See</u> County MTD at 1. On November 22, 2024, the State/CYFD Defendants filed their MTD. <u>See</u> State/CYFD MTD at 1. Defendant State Bar files its Renewed Motion to Dismiss on November 27, 2024. <u>See</u> State Bar MTD at 1. On January 2, 2025, Tomlin filed her Objections to Defendants' Motions to Dismiss. <u>See</u> Plaintiff's Objections to Defendants' Motion to Dismiss, filed January 2, 2025 (Doc. 13)("Objections"). On January 15, 2025, Bernalillo County and the Justice Center filed their Reply, <u>See</u> Defendants' Bernalillo County and John E. Brown Juvenile Justice Center's Reply to Plaintiff's Response Their Motion to Dismiss Plaintiff's Complaint, filed

January 15, 2025 (Doc. 14), as did the State Bar, see Defendant State Bar of New Mexico's Reply in Support of Renewed Motion to Dismiss, filed January 15, 2025 (Doc. 16). The State/CYFD Defendants file the Defendants' Reply in Support of Motion to Dismiss on January 16, 2025 (Doc. 18). Tomlin files the Plaintiff's Sur-Reply in Memorandum in Response to Defendants' Notice of Completed Briefing and Motion to Dismiss on February 24, 2025 (Doc. 27)("Plaintiff's Sur Reply"). Han files her MTD on August 5, 2025. Tomlin files the Plaintiff's Response in Opposition to Defendant Han's Motion to Dismiss on August 28, 2025 (Doc. 45).

On January 24, 2025, Tomlin files her Motion to Bifurcate. See Motion to Bifurcate at 1. Briefing on the Motion to Bifurcate was completed on February 6, 2025, when the State/CYFD Defendants responded in opposition. See Response to Plaintiff's Motions to Bifurcate Federal Constitutional Claims from State Claims, filed February 6, 2025 (Doc. 21). The State Bar of New Mexico files Defendant State Bar of New Mexico's Joinder in Response to Plaintiff's Motions to Bifurcate Federal Constitutional Claims from State Claims on February 7, 2025 (Doc. 22), and Bernalillo County and the Justice Center join in opposition to the motion by filing Bernalillo County and the Justice Center's in the State Defendants' Response to Plaintiff's Motion to Bifurcate on February 7, 2025 (Docs. 23).

On February 27, 2025, the Honorable Gregory B. Wormuth, Chief United States Magistrate Judge for the United States District Court for the District of New Mexico, issues an Order to Show Cause (Doc. 28) directing Tomlin to demonstrate that she has served certain Defendants namely, Johnson-Hopkins, Smith, Hubka, Tasso, and Han. See Order to Show Cause at 2. On March 13, 2025, Tomlin files the Motion to Amend (Doc. 30)("Motion to Amend"). Tomlin demonstrates therein that she has served Johnson-Hopkins, Smith, and Hubka, and requests to serve Han and Tasso by alternative means. She also requests leave to amend her Complaint and to add CYFD as

a Defendant.  See generally Motion to Amend at 3.  On March 27, 2025, the State/CYFD files a response in opposition to Tomlin's request to amend, arguing that such an amendment is futile. See Response to Plaintiff's Motion for Leave to Amend Complaint, filed March 27, 2025 (Doc. 32)("State/CYFD Opposition to Amendment").  On April 25, 2025, Chief Magistrate Judge Wormuth issues an Order for Supplemental Reply, at 1 (Doc. 34), allowing Tomlin to file an additional reply addressing the futility argument.  Tomlin files the Plaintiff's Supplemental Brief & Affidavit on May 8, 2025 (Doc. 36)("Supplemental Brief to Amend").  On June 12, 2025, Chief Magistrate Judge Wormuth denies Tomlin's request to serve Han and Tasso by alternative means, leaving only Tomlin's request to amend her Complaint outstanding.  See Order Denying In Part Motion for Alternative Service, filed June 12, 2025 (Doc. 37).  On July 9, 2025, Tomlin files executed summons for Tasso, see Summons in a Civil Action, filed July 9, 2025 (Doc. 39), and Han, see Summons in a Civil Action, filed July 9, 2025 (Doc. 40).

## LAW REGARDING 12(b)(6) MOTIONS

To survive a motion to dismiss under rule 12(b)(6), a complaint must present factual allegations that, assumed to be true, "raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)("Twombly").  While the Court must accept all well-pled factual allegations as true, it need not accept conclusory, unsupported allegations, and may not consider matters outside the pleading.  See Twombly, 550 U.S. at 555; Dunn v. White, 880 F.2d 1188, 1190 (10th Cir. 1989).  A complaint may be dismissed under rule 12(b)(6) if "it is 'patently obvious' that the plaintiff could not prevail on the facts alleged."  Hall v. Bellmon, 935 F. 2d 1106, 1110 (10th Cir. 1991)("Hall")(quoting McKinney v. Okla. Dep't of Human Servs., 925 F.2d 363, 365 (10th Cir. 1991)).  A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570.  Although a well-pleaded complaint may

proceed even if recovery appears unlikely, dismissal is warranted where the claim is legally or factually insufficient to meet the plausibility standard.  See Twombly, 550 U.S. at 570.

1.    **Legal Standards for The Construction of Pro Se Pleadings.**

When a party proceeds pro se, a court construes the plaintiff's pleadings liberally, and holds them "to a less stringent standard than formal pleadings drafted by lawyers*."*  Hall, 935 F.2d at 1110 (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972)).  "[I]f the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements."  Hall, 935 F.2d at 1110.  Courts should not assume, however, the role of advocate for a pro se litigant and "are not required to fashion [a pro se party's] arguments for him where his allegations are merely conclusory in nature and without supporting factual averments."  United States v. Fisher, 38 F.3d 1144, 1147 (10th Cir. 1994)(citing Hall*,* 935 F.2d at 1110).  Additionally, "*pro se* status does not excuse the obligation of any litigant to comply with the fundamental requirements of the Federal Rules of Civil and Appellate Procedure."  Ogden v. San Juan Cty., 32 F.3d 452, 455 (10th Cir. 1994)(citing Nielsen v. Price, 17 F.3d 1276, 1277 (10th Cir. 1994)).

## ANALYSIS

Tomlin's Complaint alleges a variety of claims against a mix of non-individual entities and individuals.  It is confusing which causes of action she alleges against which Defendants.  See generally Complaint.  Ultimately, that Tomlin does not state clearly the Defendants at issue for each allegation is not determinative.  The lack of clarity is not determinative, because  Tomlin's: (i) NMCRA claims are barred by the applicable statute of limitations, and tolling does not save the claims; (ii) NMTCA claim, to the extent Tomlin is alleging an NMTCA action, is barred by the

applicable statute of limitations; (iii) 42 U.S.C § 1983 and 42 U.S.C. § 1985, as to the State as an

employer, claims are barred by the applicable statute of limitations; (iv) NMRFRA allegations are

conclusionary and do not state a claim on the face of the Complaint; (v) claims against Han are

barred by the applicable statute of limitations; (vi) New Mexico Code of Judicial Conduct fails

because the Code does not provide for a private right of action; (vii) RICO claim does not allege

an injury within the scope of the statute; (viii) Rule 1-060(B) relief is not appropriate; (ix) request

to add CYFD as a defendant would be futile; and (x) request to remand her State law claims is not

appropriate.

## I.    THE COURT CONCLUDES THAT TOMLIN'S NMCRA CLAIMS FAIL AS A MATTER OF LAW.

Tomlin asserts claims, pursuant to the NMCRA, N.M.S.A. §§ 41-4A-1 through §§ 41-

4A-13, against the State of New Mexico, Bernalillo County, and State Bar.  See Complaint ¶¶ 1-

10, at 53-54.  The NMCRA provides:

> A public body or person acting on behalf of, under color of or within the course and scope of the authority of a public body shall not subject or cause to be subjected any resident of New Mexico or person within the state to deprivation of any rights, privileges or immunities secured pursuant to the bill of rights of the constitution of New Mexico.
>
> A person who claims to have suffered a deprivation of any rights, privileges or immunities pursuant to the bill of rights of the constitution of New Mexico due to acts or omissions of a public body or person acting on behalf of, under color of or within the course and scope of the authority of a public body may maintain an action to establish liability and recover actual damages and equitable or injunctive relief in any New Mexico district court.

N.M.S.A §41-4A-3.  Accordingly, the Court will consider Tomlin's NMCRA claims as they relate

to actions taken under color of or within the course and scope of authority of a public body.

### A.    THE APPLICABLE STATUTE OF LIMITATIONS BARS TOMLIN'S NMCRA CLAIMS.

To obtain dismissal at the rule 12(b)(6) stage based on the statute of limitations, "the

allegations on the face of the complaint surrounding the date of accrual must 'make clear that the right sued upon has been extinguished.'" Herrera v. City of Española, 32 F.4th 980, 991 (10th Cir. 2022)(quoting Sierra Club v. Okla. Gas and Elec. Co., 816 F.3d 666, 671 (10th Cir. Cir. 2016)("Sierra Club")). To determine the date of accrual for a claim, New Mexico applies the "discovery rule." Consequently, the statute of limitations period begins to run when the claimant has knowledge of, or with reasonable diligence should have known, sufficient facts to constitute a cause of action. See Anderson Living Trust v. WPX Energy Production, LLC, 27 F. Supp.3d 1188, 1213 (D.N.M. 2014)(Browning, J.)(quoting Gerke v. Romero, 2010-NMCA-060, ¶ 8, 148 N.M. 367, 371, 237 P.3d 111, 115). See Alexander v. Oklahoma, 382 F.3d 1206, 1215 (10th Cir. 2004). The plaintiff need not have "detailed knowledge of the level of culpability of each of the actors involved;" rather, the dispositive question is "whether the plaintiff knew of facts that would put a reasonable person on notice that wrongful conduct caused the harm." Alexander v. Oklahoma, 382 F.3d at 1215-16.

Tomlin bases her allegations against the Defendants on conduct that occurred between 2013 and 2016: when her children first are removed from her care and when her parental rights are terminated. See Complaint ¶¶ 1-5, 141-46, at 33, 50. In the Complaint, she gives various examples of harm that was done: CYFD's "endless harassment and scrutiny" caused her to go into preterm labor, Complaint ¶ 19, at 35, the threats levied against her when she tried to see her children, see Complaint ¶ 46, at 38, and the occasion when Fox allegedly took her child and locked herself in a room with him, see Complaint ¶ 107, at 45. Accepting these facts as true at the MTD stage, Tomlin is aware of the events and injuries as they occur. In fact, Tomlin submits that she "went around [to] seek lawyers to help [her], sent letters to legislators and representatives, [and] filed complaints with various oversight agencies" as early as 2016. Complaint ¶ 150, at 51. From

this activity, the Court concludes that Tomlin had knowledge of sufficient facts to constitute a cause of action.  Thus, Tomlin's claims accrued in 2016 at the latest.

Because her claims accrued by 2016, Tomlin's NMCRA actions must fail, because she brings the claims beyond the relevant statute of limitations.  NMCRA claims "shall be commenced no later than three years from the date a claim can be brought for the deprivation of a right, privilege, or immunity pursuant to the bill of rights of the constitution of New Mexico."  N.M.S.A. § 41-4A-7.  Tomlin attempts to bring her claims eight years after the alleged deprivations.  Moreover, the New Mexico Legislature enacted the NMCRA in 2021 and it has only prospective application.  It states that "[c]laims arising solely from acts or omissions that occurred prior to July 1, 2021, may not be brought pursuant to the New Mexico Civil Rights Act." N.M.S.A. § 41-4A-12.  Accordingly, the Court dismisses Tomlin's NMCRA claims.

### B.    TOLLING IS NOT APPLICABLE UNDER EITHER THE CONTINUING VIOLATION DOCTRINE NOR UNDER A THEORY OF FRAUDULENT CONCEALMENT.

Notwithstanding the apparent accrual dates, Tomlin argues that the statute of limitations does not bar her claims because of a continuing violation or because of fraudulent concealment.  See Objections at 23-26.  For the reasons put forth below, these arguments both fail.[4]

### 1.    There is Not a Continuing Violation.

The continuing violation doctrine, the Supreme Court of the United States first articulates in Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002), provides that a claim "will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period."  536 U.S. at 122.  The doctrine "applies

---

[4] State law governs the tolling of the statute of limitations for Tomlin's claims including for the federal claims.  See Mondragon v. Thompson, 519 F.3d 1078, 1082 (10th Cir. 2008).  See Fratus v. DeLand, 49 F.3d 673, 675 (10th Cir. 1995).

when the plaintiff's claim seeks redress for injuries resulting from a series of separate acts that collectively constitute one unlawful act, as opposed to conduct that is a discrete unlawful act." Hamer v. City of Trinidad, 924 F.3d 1093, 1098 (10th Cir. 2019)("Hamer")(quoting Sierra Club, 816 F.3d at 672). "An important caveat to the continuing violation doctrine, however, is that it is 'triggered by continual unlawful acts, not by continual ill effects from the original violation.'" Hamer, 924 F.3d at 1099 (quoting Mata v. Anderson, 635 F.3d 1250, 1253 (10th Cir. 2011)).

The continuing violation doctrine goes to the question when the claim accrues and not whether the statutory period is tolled. Ramirez v. Trujillo, No. CIV 10-448 WJ/ACT, 2010 WL 11618914, *2 (D.N.M. Dec. 3, 2010)(Johnson, J.). "'[W]here a tort involves a continuing or repeated injury, the cause of action accrues at, and limitations begin to run from, the date of the last injury.' In other words, the statute of limitations does not begin to run until the wrong is over and done with." Tiberi v. Cigna Corp., 89 F.3d 1423, 1430-31 (10th Cir. 1996)(quoting 54 C.J.S. Limitation of Actions § 177 (1987)).

Tomlin contends that the Defendants' actions constitute a continuing violation for several reasons: (i) the allegedly "fraudulent hearing" resulted in a "void order" that remains in effect[5]; (ii) the continued removal of her children constitutes an ongoing harm, analogous to Custodial Interference under NMSA § 30-4-4 (2024); and (iii) the children's adoptive parent, Melanie Hubka, filed for a restraining order against Tomlin in an alleged attempt to alienate deliberately and fraudulently Tomlin from her children. See Objections at 23-25; Complaint ¶ 18, at 6. The State court denies the request for a restraining order, but Tomlin alleges that this attempt is

---

[5] Tomlin presumably is referring to the order terminating her parental rights, but it is not clear.

evidence of a systemic cover-up and coordinated attack on her rights.  See Objections at 24;
Plaintiff's Sur Reply at 3-4.

        None of these allegations support the application of the continuing violation doctrine.  That
doctrine requires at least one wrongful act within the limitations period contributing to an ongoing
pattern of unlawful conduct.  It does not apply when the plaintiff merely experiences the continued
effects of a past, discrete violation.  In Colby v. Herrick, 849 F.3d 1273 (10th Cir. 2017), the United
States Court of Appeals for the Tenth Circuit rejects a similar argument, holding that the plaintiff's
claims arise from a specific event -- the seizure of her property -- and the subsequent loss of access
to the property or the State's refusal to provide a hearing do not revive the claims.  See 849 F.3d
at 1280-81.  Likewise, here, the entry of the court order terminating Tomlin's parental rights in
2016 is a discrete act.  The continuing violation doctrine does not apply to such singular events.
See Hamer, 924 F.3d at 1098.  Tomlin does not allege any new, actionable misconduct after 2016.
Tomlin's allegations of a cover-up or ongoing harm, such as the adoption of her children or
Hubka's post-termination restraining order petitions, are merely consequences of the original
order.  They do not constitute separate torts or impact Tomlin's parental rights, as they have already
been terminated.  Accordingly, the termination of parental rights extend the 2016 accrual date of
Tomlin's claims when she became aware of the injury, and the applicable statute of limitations
now time-bars her claims.

        **2.    <u>Fraudulent Concealment Does not Save Tomlin's Claims</u>.**

        Under New Mexico law, the party asserting that the statute of limitations is tolled has the
burden of setting forth sufficient facts to support that position.  See Roberts v. Barreras, 484 F.3d
1236, 1240 (10th Cir. 2007)("Roberts")(citing City of Carlsbad v. Grace, 1998-NMCA-144, ¶ 4,
126 N.M. 95, 98, 966 P.2d 1178, 1181.  Equitable tolling typically applies in cases where an

extraordinary event beyond the litigants control prevents the litigant from filing suit.  See Roberts,
484 F.3d at 1241 (citing Marsh v. Soares, 223 F.3d 1217, 1220 (10th Cir. 2000)).    Such
"extraordinary event[s]" include conduct by a defendant that caused the plaintiff to refrain from
filing an action during the applicable period.  Roberts, 484 F.3d at 1241.  Under New Mexico law,
fraudulent concealment doctrine is a form of equitable estoppel that tolls the statute of limitations
only when the plaintiff fails to discover the alleged wrong within the statutory period due to the
defendant's fraudulent concealment.  Tomlinson v. George, 2005-NMSC-020, ¶ 2, 138 N.M. 34,
35, 116 P.3d 105, 106.  If the plaintiff discovers the injury within the statutory period, tolling does
not apply, because the defendant's conduct has not prevented timely filing, and because equitable
relief is unnecessary.  See Tomlinson v. George, 2005-NMSC-020, ¶ 14, 138 N.M. 34, 40, 116
P.3d at 111.

      To establish fraudulent concealment, the plaintiff must prove that the defendant "(1)
concealed material facts, falsely represented material facts, or made representations of fact
different or inconsistent with later assertions in court; (2) had an intent or expectation that such
conduct would be acted upon by the plaintiff; and (3) possessed either actual or constructive
knowledge of the real facts."  Little v. Baigas, 2017-NMCA-027, ¶ 23, 390 P.3d 201, 210 (quoting
Vill. of Angel Fire v. Bd. of Cty. Comm'rs of Colfax Cty., 2010-NMCA-038, ¶ 19, 148 N.M. 804,
809, 242 P.3d 371, 376).    The plaintiff also must prove that he or she "(1) lacked both the
knowledge and the means of acquiring knowledge of the truth as to the facts in question; (2) relied
on the defendant's conduct; and (3) acted upon that conduct in a way that prejudicially altered [he
or her] position."  Little v. Baigas, 2017-NMCA-027, ¶ 23, 390 P.3d at 210 (quoting Vill. of Angel
Fire v. Bd. of Cty. Comm'rs of Colfax Cty., 2010-NMCA-038, ¶ 19, 148 N.M. 804, 809, 242 P.3d
371, 376).  "The party asserting fraudulent concealment 'must plead circumstances giving rise to

estoppel with particularity.'"  F.D.I.C. v. Schuchmann, 224 F. Supp.2d 1332, 1343 (D.N.M. 2002)(Vazquez, J.)("Schuchmann")(quoting Cont'l Potash, Inc. v. Freeport-McMoran, Inc., 1993-NMSC-039, 115 N.M. 690, 858 P.2d 66, 74)("Continental Potash").  Mere conclusory or vague allegations are insufficient.  Schuchmann, 224 F. Supp.2d at 1343.  The burden is on the party asserting estoppel to show: (i) affirmatively they were unaware of the cause of action prior to the running of the statute of limitations, (ii) they exercised due diligence, and (iii) that an affirmative act of fraudulent concealment prevented discovery despite that diligence.  See Cont'l Potash, 1993-NMSC-039, ¶ 31, 115 N.M. 690, 698, 858 P.2d at 74.

Here, Tomlin does not make a sufficient showing in support of the elements necessary to establish fraudulent concealment.  She alleges that State/CYFD officials misled her into believing her case was being resolved favorably before the termination hearing and withheld material facts affecting her parental rights.  See Complaint ¶¶ 141-54, at 50, 69; Plaintiff's Sur Reply at 4. However, her claims indicate that she was aware of the Defendants' "fabricate[d] lies" at the time of the termination hearing, if not earlier.  Complaint ¶¶ 144-45, at 50.  Tomlin does not assert that any of the alleged lies prevented her from knowing the true facts underlying her claims.  Nor does she contend that she relied on the Defendants' conduct or that such conduct prejudicially caused her to alter her position.

Tomlin was aware of the removal of her children from her custody, the termination of her parental rights, and the events leading to those actions between 2013 and 2016.  Accordingly, her injury was or should have been reasonably apparent at the time.  Consequently, her claims accrued in 2016, triggering the start of the statute of limitations.  By 2019 at the latest, the statute of limitations had expired, yet Tomlin files her Complaint in 2024.  She does not identify any extraordinary circumstances, continuing unlawful acts, or fraud that justifies tolling the statute of

limitations.  The Court, therefore, concludes that the statute of limitations is not tolled.

## II.    THE COURT CONCLUDES THAT TOMLIN'S NMTCA CLAIMS FAIL AS A MATTER OF LAW.

Tomlin brings claims of malicious abuse of process and intentional infliction of emotional distress under the NMTCA, but she does not list them amongst her main "causes of action."  See Complaint ¶¶ 35-37, at 69.  Any tort claims arising under the NMTCA also must fail because of the statute of limitations.  New Mexico imposes a two-year statute of limitations on NMTCA claims.  See NMSA § 41-4-15; Bernheisel v. CYFD, No. CIV 21-0037 KG/SCY, 2022 WL 1262215, *3 (D.N.M. April 28, 2022)(Gonzales, J.).  The facts as pled by Tomlin reveal that the cause accrued in 2016 at the latest -- when her parental rights were terminated -- and she files her complaint in October of 2024 -- a period of approximately eight years.  See generally Complaint.  For the reasons explained above, the Court concludes the statute of limitations should not be tolled.  Accordingly, Tomlin's NMTCA claims are barred by the statute of limitations and must be dismissed for failure to state a claim under rule 12(b)(6).

## III.    TOMLIN'S 42 U.S.C § 1983 AND 42 U.S.C. § 1985 CLAIMS FAIL AS A MATTER OF LAW.

Tomlin pleads claims under both 42 U.S.C. § 1983 and 42 U.S.C. § 1985.  Both claims, however, are barred by the applicable statute of limitations.  As discussed above, Tomlin in the Complaint specifics that she knew about the alleged unlawfulness of the Defendants' actions back in 2016, but the Complaint was not filed until 2024, long after the statute of limitations had expired.  Tomlin, moreover, does not meet the plausibility standard to state a claim.  The Court concludes both claims fail as a matter of law.

### A.    THE STATUTE OF LIMITATIONS BARS TOMLIN'S 42 U.S.C. § 1983 CLAIM.

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must assert acts by government officials acting under color of State law that result in a deprivation of rights that the Constitution of the United States of America secures.  See 42 U.S.C. § 1983; West v. Atkins, 487 U.S. 42, 48 (1988).  Tomlin alleges that officials' "cumulative actions" violate her Constitutional rights, and "reflected a pattern of behavior that was intentionally designed to disrupt and dismantle [her] familial bonds without just cause or due process."  Complaint ¶ 33, at 63.

In a § 1983 claim, courts apply the State's general personal injury statute of limitations. See Mondragon v. Thompson, 519 F.3d 1078, 1082 (10th Cir. 2008).  In New Mexico, the relevant law creates a three-year statute of limitations.  See Varnell v. Dora Consol. Sch. Dist., 756 F.3d 1208, 1212 (10th Cir. 2014)("Varnell"); N.M.S.A. § 37-1-8.  Because the injury in a § 1983 case is the violation of a Constitutional right, the claims accrue when the plaintiff knows or should have known that her Constitutional rights were violated.  See Mercer-Smith v. New Mexico Children, Youth & Families Dept., 416 F. App'x 704, 710 (10th Cir. 2011)("Mercer-Smith")(citing Smith v. City of Enid ex rel. Enid City Comm'n, 149 F.3d 1151, 1154 (10th Cir.1998)).[6]  "'This requires

---

[6] Mercer-Smith v. New Mexico Children, Youth & Families Dept. is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").  The United States Court of Appeals for the Tenth Circuit states:

> In this circuit, unpublished orders are not binding precedent, . . . And we have generally determined that citation to unpublished opinions is not favored.  However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).  The Court concludes that Mercer-Smith v. New Mexico Children, Youth & Families Dept., 416 F. App'x 704 (10th Cir. 2011), Lyons v. Kyner, 367 F. App'x 878 (10th Cir. 2010), Cahn v. Word, 798 F. App'x 244 (10th Cir. 2020), and Ayala v. Holmes, 29 F. App'x 548 (10th Cir. 2002) have persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum

the court to identify the Constitutional violation and locate it in time.'" Mercer-Smith, 416 F. App'x at 710 (citing Smith v. City of Enid ex rel. Enid City Comm'n, 149 F.3d at 1154).

Tomlin knew of the Defendants' allegedly unlawful actions no later than 2016 and was therefore on notice that her Constitutional rights may have been violated. Accordingly, therefore, the applicable statute of limitations bars Tomlin's § 1983 claim.

### B.    THE STATUTE OF LIMITATIONS BARS TOMLIN'S 42 U.S.C. § 1985 CLAIM.

To state a claim for deprivation of rights or privileges under 42 U.S.C. § 1985, a plaintiff must allege: (i) a conspiracy, motivated by class based or racially discriminatory animus; (ii) to deprive the plaintiff of equal protection or equal protections of the laws; (iii) an act in furtherance of the conspiracy; and (iv) an injury or deprivation resulting therefrom. See Hunt v. Cent. Consol. School Dist., 951 F. Supp. 2d 1136 (D.N.M. 2013)(Browning, J.)("Hunt"); Archuleta v. City of Roswell, 898 F. Supp. 2d 1240, 1248 (D.N.M. 2012)(Browning, J.). Conclusory allegations that the defendants act in concert or conspire, without specific supporting facts, are insufficient to survive dismissal. Hunt, 951 F. Supp. 2d at 1177.

Here, Tomlin alleges that, in March, 2014, after her children were returned to her care, the CYFD Defendants conspire to re-remove them to deprive Tomlin of her familial rights and to prevent her from exercising other legal rights. See Complaint ¶ 12, at 66. She contends that the conspiracy persists to the present, as Hubka continues to appear in State court and "make false allegations" to conceal the conspiracy. Objections ¶ 3, at 13. Tomlin asserts CYFD targets her, because she is "the only mother that had beat CYFD so quickly and strongly," and "the only African American in Albuquerque, New Mexico to do so." Complaint ¶ 123, at 47.

---

Opinion and Order.

Tomlin does not identify, however, any specific State actions that demonstrate the formation or execution of a conspiracy under § 1985. While the Court accepts as true all factual assertions at the 12(b)(6) stage, the Court is not bound to accept conclusory statements of law. See Twombly, 550 U.S. at 555. Tomlin's assertions, which she describes as "specific allegations of conspiracy," fall short of the plausibility standard. Objections ¶ 6, at 12-13.

Even assuming, that Tomlin's pleadings are sufficient, the applicable statute of limitations still bars her § 1985 claim. Courts apply the forum State's personal-injury statute of limitations for § 1985(3) conspiracy claims. See Lyons v. Kyner, 367 F. App'x 878, 881-82 (10th Cir. 2010)("Lyons"); see also Rozar v. Mullis, 85 F.3d 556, 561 (11th Cir.1996); Kaster v. Iowa, 975 F.2d 1381, 1382 (8th Cir.1992)(per curiam); McDougal v. County of Imperial, 942 F.2d 668, 673-74 (9th Cir.1991); Bougher v. Univ. of Pittsburgh, 882 F.2d 74, 79 (3d Cir.1989). New Mexico's three-year statute of limitations, thus, applies. Varnell, 756 F.3d at 1212. The limitations period for a § 1985(3) action "'runs from the occurrence of the last overt act resulting in damage to the plaintiff.'" Lyons, 367 F. App'x at 882. (quoting Bell v. Fowler, 99 F.3d 262, 270 (8th Cir. 1996)). Although Tomlin alleges an ongoing cover-up, citing the petitions for restraining orders filed as recently as 2024, see Objections ¶ 3, at 13, these are not "overt acts [of the conspiracy] resulting in damage to the Tomlin," Objections ¶ 4, at 12. Lingering effects following the termination of Tomlin's parental rights, such as her children being adopted, or restraining orders being filed against her, are the order's consequences. Neither the continued removal of her children nor the restraining order petitions results in damage to the Tomlin, because her parental rights are terminated.

The termination of Tomlin's parental rights is the alleged conspiracy's most recent harm-causing overt act, which occurs 2016. She was aware of the injury at the time, so her claims

accrued in 2016.  Accordingly, the latest she could bring a claim under 42 U.S.C § 1985 was in 2019.  The Court concludes, because she failed to bring a claim at that time, the applicable statute of limitations time-bars Tomlin's 42 U.S.C. § 1985 claim.

## IV.   TOMLIN DOES NOT STATE A NMRFRA CLAIM AGAINST A STATE ACTOR.

For her "2nd Cause of Action," Tomlin brings a claim against "individual defendants and their employers" for violation of the NMRFRA.  Complaint ¶ 1, at 75.  NMRFRA prohibits a government agency from restricting a person's free exercise of religion unless (i) the restriction is generally applicable, and does not discriminate against religion or among religions; and (ii) the restriction is essential to, and the least restrictive means of furthering, a compelling government interest.  See N.M.S.A § 28-22-3 (2013).

The NMRFRA explicitly authorizes suits only against "a government agency."  N.M.S.A § 28-22-4(A).  The NMRFRA defines a "government agency" as "the state or any of its political subdivisions, institutions, departments, agencies, commissions, committees, boards, councils, bureaus or authorities."  N.M.S.A § 28-22-2.  See Elane Photography, LLC v. Willock, 2013-NMSC-040, 309 P.3d 53, 76.  Accordingly, Tomlin's claims against individual Defendants fail as a matter of law.  The Court addresses, however, Tomlin's NMRFRA claim to the extent that it pertains to the State as an employer.

Tomlin alleges that "the removal of her children from her custody and the subsequent demand that she pay child support" substantially burdens her sincerely held religious beliefs.  Complaint ¶¶ 2-3, at 77.  Specifically, she contends that their removal prevents her from fulfilling her religious duties to raise her children in accordance with her faith, and that the requirement to pay child support forces her to engage in income-earning activities that detract from her religious homemaking and child rearing obligations.  See Complaint ¶¶ 1-7, at 75-76.  She further contends

that the State's compelling interest in the children's best interest is insufficient to justify this infringement on her rights.  See Complaint ¶ 1, at 77.

Tomlin's assertions do not state a claim on the Complaint's face.  She alleges no evidence that the State's actions, including the termination of her parental rights and requirement to pay child support, are anything other than consequences of neutral laws of general applicability.  Tomlin alleges no facts indicating that the removal of her children was religiously discriminatory.  Her threadbare recital of elements and conclusory statements also does not meet federal pleading standards.  See Iqbal, 556 U.S. at 663.

Tomlin's broad statement, moreover, that the State lacks a compelling interest is legally unfounded.  The Supreme Court consistently has recognized that there is a compelling interest in protecting the physical and psychological well-being of minors.  See Sable Communications of California, Inc. v. F.C.C., 492 U.S. 115, 126 (1989).  Additionally, the Tenth Circuit holds that, although the forced separation of parent from child represents a serious impingement on the parent's rights, the government has a compelling interest in protecting children from harm and abuse.  See J.B. v. Washington Cnty., 127 F.3d 919, 925 (10th Cir. 1997)(citing Jordan v. Jackson, 15 F.3d 333, 346 (4th Cir. 1994)).

Tomlin's claims are conclusory and do not state a claim on the Complaint's face.[7]  Accordingly, the Court dismisses Tomlin's NMRFRA claim.

## V.   THE COURT CONCLUDES THAT THE APPLICABLE STATUTE OF LIMITATIONS BARS TOMLIN'S CLAIMS AGAINST DEFENDANT HAN.

---

[7] Even in Tomlin's objection to Defendant's Motion to Dismiss, Tomlin does not point to facts that demonstrate religious discrimination.  She says: "My complaint includes over 50 pages of factual allegations detailing ongoing misconduct by CYFD officials that substantially burdened by religious freedoms."  Objections ¶ 3, at 15.  "For instance, I have described specific actions by named individuals including [insert specific examples from the complaint, e.g. threats, coercion, or interference with religious practices]."  Objections ¶ 3, at 15.

Tomlin's "3rd Cause of Action" alleges gross negligence[8], legal malpractice, and breach of fiduciary duties against Han.  Complaint ¶¶ 1-25, at 78-83.  Tomlin asserts that she meets Han for the first time at trial, where Han refuses to make requested changes, prevents Tomlin from testifying, and tampers with evidence.  Tomlin also alleges that Han is part of a "setup scheme to pretend like the Tomlin was getting her children back and like she won her case in court."  Complaint ¶ 79, at 17.  Tomlin's claims against Han are time-barred.

In New Mexico, a claimant must filed a legal malpractice claim within four years of its accrual date.  See Cahn v. Word, 798 F. App'x 244, 248 (10th Cir. 2020); N.M.S.A. § 37-1-4.  "The statute of limitations for legal malpractice begins to run when the client discovers, or should have discovered, 'that he or she has suffered a loss and that the loss may have been caused by the attorney's wrongful act or omission.'"  Day-Peck v. Little, 2021-NMCA-034, 493 P.3d 477, 489 ("Little")(quoting Sharts v. Natelson, 1994-NMSC-114, ¶ 10, 118 N.M. 721, 724, 885 P.2d 642, 645).

Here, Tomlin's allegations -- specifically, that Han prevents Tomlin from testifying and tampers with evidence -- indicate her awareness of Han's alleged wrongful conduct around the time of the trial.  While Tomlin does not specify the trial's date, the Court can infer that the trial occurs sometime around 2016, when Tomlin's parental rights are terminated.  The applicable statute of limitations, therefore, bars Tomlin's legal malpractice claim as of 2020.

To the extent that Tomlin's claims for negligence and breach-of-fiduciary duties are separate from her legal malpractice claim, the applicable statute of limitation also bars those

---

[8] The Supreme Court of New Mexico abolished the distinction between negligence and gross negligence.  See Paiz v. State Farm Fire and Cas. Co., 1994-NMSC-079, 118 N.M. 203, 212, 880 P.2d 300, 309.

claims.    See Richter v. Van Amberg, 97 F. Supp. 2d 1255, 1261 (D.N.M.

2000)(Kelly, J.)(discussing the distinctions between legal malpractice claims based on negligence

and breaches of fiduciary duties).  New Mexico's statute of limitations for professional negligence

lawsuits is four years.  See Gosnell Dev. Corp. of Arizona v. Am. Nat'l Fire Ins. Co., No. CIV 99-

0632 JC/WWD, 1999 WL 35808988, at *3 (D.N.M. Aug. 3, 1999)(Conway, J.); 1978 N.M.S.A.

§ 37-1-4.  While the New Mexico courts have not decided definitively which, Han argues the

three-year statute of limitations, in accordance with N.M.S.A. § 37-1-8, is more appropriate.  New

Mexico courts consider both timeframes in negligence cases.  See Little v. Baigas, 2017-NMCA-

027, ¶ 23, 390 P.3d at 206 (noting that it is contested in the district court whether the statute of

limitations is three or four years); Nance v. L.J. Dolloff Associates, Inc., 2006-NMCA-012, ¶ 13,

138 N.M. 851, 855, 126 P.3d 1215, 1219 (stating that negligence principles govern the law of

negligent misrepresentation, and either a three or four year statute of limitations governs the

claim).  A breach-of-fiduciary duty is treated similarly in New Mexico as a tort or malpractice

action with a three- or four-year statute of limitations.  See Salazar v. Indymac Bank, F.S.B., No.

CIV 12-1182 MCA/RHS, 2013 WL 11955290, *10 (D.N.M. Feb. 28, 2013)(Armijo, C.J.)(stating

that actions for fraud and breach of fiduciary duties are subject to a four-year statute of limitations

under N.M.S.A. § 37-1-4 (quoting Durham v. Southwest Developers Joint Venture, 2000-NMCA-

010, ¶ 43, 128 N.M. 648, 658, 996 P.2d 911, 921)).

Regardless whether a three- or four-year statute of limitations applies, Tomlin brings her

claims too late.  The claims accrued in 2016, meaning that the window to bring suit closes in 2019

or in 2020, but Tomlin does not file her lawsuit until 2024.  Accordingly, the applicable statute of

limitation bars Tomlin's claims against Han.

## VI.    TOMLIN DOES NOT STATE A NEW MEXICO CODE-OF-JUDICAL-CONDUCT CLAIM.

In the Complaint's section titled "1st Cause of Action," Tomlin includes excerpts from the New Mexico Code of Judicial Conduct.  See Complaint ¶¶ 14-17, at 55-57.  Tomlin does not specify against which Defendants she brings those claims.  To the extent that Tomlin seeks to assert a private right of action based on these provisions, however, such a claim must fail.  The Judicial Code states that "[t]he Code is not designed or intended as a basis for civil or criminal liability.  Neither is it intended to be the basis for litigants to seek collateral remedies against each other or to obtain tactical advantages in proceedings before a court."  Code of Judicial Conduct, 21-002(G).  Accordingly, the Court concludes that Tomlin cannot assert a civil claim based on the Judicial Code.

## VII. TOMLIN DOES NOT HAVE STANDING TO MAINTAIN A FEDERAL RICO CLAIM.

Tomlin alleges that the actions taken by CYFD/State officials "fulfilled all the elements for RICO conspiracy to interfere with civil rights."  Complaint ¶ 28, at 68.  The Court dismisses Tomlin's RICO claims.[9]

The Racketeer Influenced and Corrupt Organizations Act of 1970, 18 U.S.C. § 1964(c), provides a private civil right of action for those whom are injured by a § 1962 violation.  Subsection (d) provides that it is unlawful for a person to conspire to violate any of the provisions of subsections (a)-(c).  See 18 U.S.C. § 1962(d).  A "'plaintiff has standing to bring a RICO claim only if he was injured in his business or property by reason of the defendant's violation of § 1962.'"  Gillmor v. Thomas, 490 F.3d 791, 797 (10th Cir. 2007)(quoting Deck v. Engineered Laminates,

---

[9] None of the Defendants address Tomlin's RICO claim in their MTDs.  This omission is not surprising, because Tomlin buries the potential claim in the Complaint and does not support the claim.  The Defendants request, however, that the Court dismiss Tomlin's claims against them, and the Court must construe a pro se plaintiff's allegations liberally, so the Court deals with the RICO claim here.

349 F.3d 1253, 1257 (10th Cir.2003)).

Here, Tomlin alleges a conspiracy to interfere with her civil rights, see Complaint ¶ 28, at 68, but does not allege injury or conspiracy to injure any business or property. Civil rights, standing alone, are not a property interest unless tied to a specific entitlement that State law, contract, or other independent sources provide. See Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972). RICO, moreover, requires proof of a concrete financial loss and not merely an injury to an intangible property interest. See Maio v. Aetna, Inc., 221 F.3d 472, 483 (3d Cir. 2000); In re Taxable Municipal Bond Sec. Litig., 51 F.3d 518, 523 (5th Cir. 1995)(noting that RICO does not protect an "intangible property interest"). Tomlin does not allege any injury within RICO's scope, and, accordingly, the Court dismisses her RICO claim.

## VIII.   **NMR RULE 1-060(B) DOES NOT BIND THE COURT.**

Finally, Tomlin seeks "declaratory relief by way of reversal under Rule 1-060(B) NMRA," which allows for relief from a final judgment, order, or proceeding under specific circumstances such as mistake, newly discovered evidence, fraud, or other reasons justifying relief. Complaint ¶ 3, at 84. See N.M.R.A 1-060(B). Tomlin asserts "Fraud upon the Court" as her basis for relief. Complaint ¶ 4, at 84. The Court does not grant the relief she seeks.

The New Mexico Rules of Civil Procedure do not bind federal courts as the Federal Rules of Civil Procedure govern federal courts. See Wallace v. Microsoft Corp., 596 F.3d 703, 706 (10th Cir. 2010)("Wallace"). While NMRA 1-060(B) largely mirrors rule 60(b) of the Federal Rules of Civil Procedure, NMRA 1-060(B) is a state procedural rule and applies only within the New Mexico State courts. Federal courts apply their own procedural rules, even when addressing cases removed from State courts. See Grasshopper Nat. Med., LLC v. Hartford Cas. Ins. Co., No. CIV 15-0338 JB/CEG, 2016 WL 4009834, at *19 (D.N.M. July 7, 2016)(Browning, J.)(citing Wallace,

596 F.3d at 706).  Accordingly, Tomlin's NMRA claim is not actionable in federal court.

Even if Tomlin had brought her claim under the Federal Rules of Civil Procedure, rule 60(b) does not grant federal courts the authority to provide relief from State court judgments.  See Lance v. Dennis, 546 U.S. 459, 460 (2006)(per curiam)(stating that the Rooker-Feldman doctrine, first announced by the Supreme in Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), prevents the lower federal courts from exercising jurisdiction over cases that "state-court losers" bring challenging "state-court judgments rendered before the district court proceedings commenced")(quoting Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 284 (2005)).  Rule 60(b) is not a substitute for an appeal, and the Court lacks the authority to grant the relief Tomlin seeks.

## IX.   **THE COURT DENIES TOMLIN'S MOTION TO AMEND.**

Tomlin, initially, does not name CYFD as a Defendant in her lawsuit.  See Complaint at 114 (listing the Defendants).  Tomlin argues that she sufficiently discusses adequately CYFD and its employees who are named Defendants in her Complaint to adequately "indicat[e] [CYFD's] involvement in the matters at hand."  Objections ¶ 3, at 18.  "To avoid unnecessary procedural disputes," Tomlin moves to amend her the Complaint pursuant to rule 15(a) of the Federal Rules of Civil Procedure formally to include CYFD as a Defendant.  Motion to Amend ¶ 5, at 3.  Tomlin mentions CYFD throughout the Complaint; however, allowing the amendment is futile.  The Court, therefore, denies the Motion to Amend.

Once the time to amend as a matter of course has expired, "a party may amend its pleadings only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  As The Tenth Circuit explains:

> Rule 15(a) provides that leave to amend "shall be freely given when justice so requires."  Refusing leave to amend is generally only justified upon a showing of undue delay, undue

prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment.

Frank v. U.S. West, Inc., 3 F.3d 1357, 1365 (10th Cir. 1993)(quoting Castleglen, Inc. v. Resolution Trust Corp., 984 F.2d 1571, 1585 (10th Cir.1993)).  An amendment is futile "'if the complaint, as amended, would be subject to dismissal.'"  Anderson v. Merill Lynch Pierce Fenner & Smith, Inc., 521 F.3d 1278, 1288 (10th Cir. 2008)(quoting Anderson v. Suiters, 499 F.3d 1228, 1288 (10th Cir. 2007)).

Adding CYFD as a Defendant is futile.  Tomlin serves the Complaint in October, 2024. Accordingly, the deadline to amend her pleadings as a matter of course long has passed.  See Fed. R. Civ. P. 15(a).  Tomlin has not obtained Defendants' consent, see State/CYFD Opposition to Amend at 1-2, so the only avenue to amend is through the Court's leave.  See Fed. R. Civ. P. 15(a)(2).  Tomlin does not demonstrate that her proposed amendment is not futile.  Tomlin's claims against CYFD are time-barred for the same reasons that her claims against the named Defendants are time-barred.  The Complaint as amended, accordingly, is still subject to dismissal.

Tomlin offers no new justification why CYFD's addition would not be futile. Instead, she reiterates the tolling arguments that the Court already has rejected.  See Supplemental Brief to Amend at 2-3.  For these reasons, the Court denies Tomlin's Motion to Amend the extent it seeks leave to amend the Complaint.

## X.    THE COURT DENIES TOMLIN'S MOTION TO BIFURCATE.

In Tomlin's Motion to Bifurcate, she requests that the Court separate her State and federal law claims, asserting that the State law claims predominate and involve complex questions of law that the New Mexico courts are best to address.  See Motion to Bifurcate ¶¶ 7-13, at 2-3. Specifically, she argues that her NMCRA claims "raise[] issues of state constitutional law and statutory interpretation," her NMRFRA claims "require[] an analysis of New Mexico's unique

protections for religious freedom," and her NMTCA claims "involve[] state-specific procedural and substantive requirements for liability against government entities and employees."  Motion to Bifurcate ¶¶ 7-9, at 2-3.  Tomlin further asserts that bifurcation would "streamline the litigation process," that her State and federal claims arise from distinct legal principles and factual bases, and that "proceeding with all claims in federal court may prejudice [her] state law claims" because of the federal court's lack of familiarity with New Mexico law.  Motion to Bifurcate ¶ 12-13, at 3.  After carefully considering these arguments, the Court denies Tomlin's Motion to Bifurcate.

Federal courts are courts of limited jurisdiction that "'possess only that power authorized by the Constitution and statute.'"  Favela v. City of Las Cruces ex rel. Las Cruces Police Dep't, 431 F. Supp. 3d 1255, 1270 (D.N.M. 2020)(Browning, J.)("Favela")(quoting Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994)).  Congress has granted federal courts the authority to hear controversies arising under federal law -- federal-question jurisdiction -- and controversies between citizens of different states -- diversity jurisdiction.  See 28 U.S.C. §§ 1331-32.  Section 1367 grants federal courts an additional power: the discretion to hear claims over which the court lacks original jurisdiction if those claims are part of the same "case or controversy" as claims over which the court has original jurisdiction.  28 U.S.C. § 1367(a).  Accordingly, federal courts may exercise jurisdiction over State law claims when "state and federal claims . . . derive from a common nucleus of operative fact."  United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966)("United Mine Workers").

When deciding whether to exercise supplemental jurisdiction, courts consider: (i) whether the claim raises a novel or complex issue of State law, (ii) whether the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (iii) whether the district court has dismissed all claims over which it has original jurisdiction, or

(iv) whether, in exceptional circumstances there are other compelling reasons for declining jurisdiction.  See 28 U.S.C. § 1367(c).  When applying these factors, district courts exercise supplemental jurisdiction to "'vindicate values of economy, convenience, fairness, and comity.'" Favela, 431 F. Supp. 3d at 1271 (quoting Estate of Harshman v. Jackson Hole Mountain Resort Corp., 379 F.3d 1161, 1164 (10th Cir. 2004)).  The standard for bifurcating State and federal claims and remanding the State claims to State court, as Tomlin seeks here, is primarily guided by these principles of supplemental jurisdiction under 28 U.S.C. § 1367.

There is no compelling reason at this stage to remand Tomlin's State Constitutional Claims The Court exercises original jurisdiction over Tomlin's federal law claims pursuant to 28 U.S.C. § 1331.  The Court, subsequentially, has discretion to exercise supplemental jurisdiction over Tomlin's State law claims.  Exercising that discretion is appropriate here at this stage, because: (i) Tomlin's State law claims derive from an identical set of facts and do not substantially predominate over her federal claims, (ii) the Court may be able to resolve at least some of the State law claims without addressing novel or complex issues of State law, and (ii) judicial economy supports exercise of supplemental jurisdiction at this stage.

All of Tomlin's claims -- whether brought under 42 U.S.C. § 1983, § 1985, NMCRA, NMRFRA, or the NMTCA -- stem from the same underlying factual allegations: CYFD and its employees' treatment of her during the removal of her children and termination of her parental rights between 2013 and 2016.  See generally Complaint.  Because both the State and federal claims are based on the same core events, they are intertwined.  "Whether state-law claims predominate is assessed 'in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought.'"  Horner v. A'Viands, LLC, No. CIV 16-1164 MCA/LF, 2016 WL 9774955, *3 (D.N.M. Dec. 14, 2016)(Armijo, C.J.)("Horner")(quoting United

<u>Mine Workers</u>, 383 U.S. at 726-27 (1966)).  When State and federal claims arise from "'similar or identical facts,'" courts have held that the State law claims do not predominate.  <u>See</u> <u>Horner</u>, 2016 WL 9774955, *3 (quoting <u>Gard v. Teletronics Pacing Sys., Inc.</u>, 859 F. Supp. 1349, 1353 (D. Colo. 1994)(Kane, J.)).

Further, the Court can address Tomlin's State law claims without implicating any novel or complex issues of State law.  This realistically is possible, because, as discussed above, the applicable statute of limitations time bars Tomlin's claims.  Accordingly, the Court need not address "issues of state constitutional law and statutory interpretation," "New Mexico's unique statutory protections," or "state-specific procedural and substantive requirements."  Motion to Bifurcate ¶¶ 7-13, at 2- 3.

Finally, Tomlin's contention that bifurcation would "streamline" the litigation is unconvincing at this stage.  Motion to Bifurcate ¶ 10, at 3.  In fact, the opposite may be true at this stage.  Bifurcation could result in duplicative proceedings in parallel court systems, each considering the same factual allegations.  This approach could lead to inefficiency and wasted judicial resources.  The Court is well equipped to adjudicate Tomlin's claims, and no compelling reason exists to remand her claims to State court.  Accordingly, the Court denies Tomlin's Motion to Bifurcate.

## XI.    THE COURT DOES NOT ADDRESS CLAIMS AGAINST THE DEFENDANTS WHO HAVE NOT SUBMITTED BRIEFING.

Several defendants have not filed MTDs.  Accordingly, the Court does not address Tomlin's claims against Tasso, Johnson-Hopkins, Smith, or Hubka, because these Defendants have not filed pending motions.

## XII.    THE COURT CAUTIONS TOMLIN THAT RULE 11 APPLIES TO CITATIONS

**THAT PRO SE PLAINTIFFS PROVIDE**.

Finally, the Court addresses concerns regarding certain authorities that Tomlin cites and warns that continued issues may result in sanctions. The Tenth Circuit requires all litigants, including those proceeding pro se, to comply with the Federal Rules of Civil Procedure. See Nielsen v. Price, 17 F.3d 1276, 1277 (10th Cir. 1994)(explaining that the Tenth Circuit "has repeatedly insisted that pro se parties 'follow the same rules of procedure that govern other litigants'")(quoting Green v. Dorrell, 969 F.2d 915, 917 (10th Cir. 1992)). Rule 11 of the Federal Rules of Civil Procedure imposes an obligation on parties to ensure that filings are legally and factually grounded. See Fed. R. Civ. P. 11. Courts have held that using a fake opinion to support an argument is a violation of rule 11(b)(2). See Dehghani v. Castro, 782 F. Supp. 3d 1051, 1058 (D.N.M. 2025)(Strickland, J.). See also Wadsworth v. Walmart Inc., 348 F.R.D. 489, 495 (D. Wyo. 2025)(Rankin, J.); Mata v. Avianca, Inc., 678 F. Supp. 3d 443, 461 (S.D.N.Y. 2023)(Castel, J.).

The Court raises this issue, because Tomlin cites several cases in opposition to the Defendants' MTD that the Court is unable to locate using standard research tools. See Order for Copies of Authorities, filed May 7, 2025 (Doc. 35). Chief Magistrate Judge Wormuth ordered Tomlin to produce copies of the authorities. See Order for Copies of Authorities at 1. Tomlin has not complied with that order. Either she cannot find the requested case law, or she provides cases that do not support her contentions. The Court therefore suspects that Tomlin drafts this filing with the use of ChatGPT or a similar artificial intelligence (AI) tool that sometimes produce hallucinations -- citations to cases that do not exist.[10] Although courts "'make some allowances

---

[10] A hallucination occurs when an AI database generates fake sources of information:

AI models are trained on data, and they learn to make predictions by finding

for the *pro se* [p]laintiff's failure to cite to proper legal authority,'" courts can not excuse the use of fabricated or misleading authorities.  Morgan v. Cmty. Against Violence, No. CIV 23-0353 WPJ/JMR, 2023 WL 6976510, *7 (D.N.M. Oct. 23, 2023)(Johnson, C.J.)(quoting James v. Wadas, 724 F.3d 1312, 1315 (10th Cir. 2013)).

Accordingly, the Court advises Tomlin that she must comply with the local court rules, the Court's Guide for Pro Se Litigants, and the Federal Rules of Civil Procedure.  Any future filings that contain citations to nonexistent cases may result in sanctions, including the Court striking pleadings, filing restrictions, or dismissal of the case.  See Ehrenhaus v. Reynolds, 965 F.2d 916, 920 (10th Cir. 1992)(explaining dismissal is "appropriate only when the aggravating factors like bad faith or willfulness outweigh the judicial system's strong predisposition to resolve cases on their merits"); Werner v. State of Utah, 32 F.3d 1446, 1447 (10th Cir. 1994)(explaining that filing restrictions are appropriate when a litigant abuses privileges such as proceeding in forma pauperis and being afforded the lenience due to pro se litigants); Ayala v. Holmes, 29 F. App'x 548, 551 (10th Cir. 2002)(stating a court has the inherent power to regulate the activities of vexatious or abusive litigants after appropriate notice is given).  See Morgan v. Cmty. Against Violence, No. CIV 23-0353 WPJ/JMR, 2023 WL 6976510, *7.  See also Willy v. Coastal Corp., 855 F.2d 1160, 1172 (5th Cir. 1988)(citing nonexistent rules of law can lead to rule 11 sanctions).

---

patterns in the data.  However, the accuracy of these predictions often depends on the quality and completeness of the training data.  If the training data is incomplete, biased, or otherwise flawed, the AI model may learn incorrect patterns, leading to inaccurate predictions or hallucinations.

Wadsworth v. Walmart Inc., 348 F.R.D. 489, 493 (D. Wyo. Feb 24, 2025)(Rankin, J.)(citing *What are AI Hallucinations?*, Google Cloud, https://cloud.google.com/discover/what-are-ai-hallucinations).

**IT IS ORDERED** that: (i) Defendants Bernalillo County and John E. Brown Juvenile Justice Center's Motion to Dismiss Plaintiff's Complaint, filed November 21, 2024 (Doc. 5), is granted; (ii) Defendants Motion to Dismiss, filed November 22, 2024 (Doc. 8), is granted; (iii) Defendant State Bar of New Mexico's Renewed Motion to Dismiss, filed November 27, 2024 (Doc. 9), is granted; (iv) Defendant Han's Motion to Dismiss, filed August, 2025 (Doc. 42), is granted; (v) the request in the Plaintiff's Reply to Order to Show Cause and Motion for Alternative Service & Leave to Amend Complaint, filed March 13, 2025 (Doc. 30), is denied, insofar as it request leave to amend the Civil Complaint, filed October 9, 2025 (Doc. 1-1); and (vi) the Plaintiff's Motion to Bifurcate Federal Constitutional Claims from State Claims, filed January 24, 2025 (Doc. 20), is denied.  Accordingly, the Court dismisses Tomlin's: (i) NMCRA claims; (ii) NMTCA claims; (iii) 42 U.S.C. § 1983 claims; (iv) 42 U.S.C. § 1985 claims; (v) NMRFRA claims; (vi) New Mexico Code of Judicial Conduct claims; (vii) RICO claims; (viii) and NMR Rule 1-060(B) claims against Defendants Bernalillo County, John E. Brown Juvenil Justice Center, the State of New Mexico, Michelle Lujan Grisham, Susan Martinez, Melory Harper, Andrea Gonzalez, Ana Fox, Nicole Mayer, Alysse Hodgins, Dana Oskins, and Brianna Chavez, and Elizabeth Han without prejudice; (ix) the Court dismisses Tomlin's malpractice, negligence, and breach-of-fiduciary duties claims against Defendant Elizabeth Han without prejudice; and (x) the Court does not address the above State and federal claims as they pertain to Defendants Peter Tasso, Linda Johnson-Hopkins, Helen Smith, and Melanie Hubka.

UNITED STATES DISTRICT JUDGE

- 32 -

*Parties and Counsel:*

Renesha K. Tomlin
Albuquerque, New Mexico

     *Plaintiff pro se*

Bryan C. Garcia
Jessica L. Czajkowski
Garcia Law Group, LLC
Albuquerque, New Mexico

     *Attorneys for Defendants the State of New Mexico, Michelle Lujan Grisham,*
          *Melory Harper, Andrea Gonzalez, Ana Fox, Nicole Mayer, Alysse Hodgins, Dana*
          *Oskins, and Brianna Chavez.*

-- and --

Bryan C. Garcia
Garcia Law Group, LLC
Albuquerque, New Mexico

     *Attorneys for Defendant Susanna Martinez*

-- and --

Daniel J. Macke
Macke Law & Policy, LLC
Albuquerque, New Mexico

     *Attorneys for Defendants Bernalillo County and John E. Brown Juvenile Justice Center*

-- and --

Samantha Adams
Adams Crow Law Firm, LLC
Albuquerque, New Mexico

     *Attorneys for Defendant Peter Tasso*

-- and --

Meredith M. Baker
Law Office of Meredith M. Baker, LLC
Albuquerque, New Mexico

*Attorney for Defendant Elizabeth Hahn*

-- and --

Linda Johnson-Hopkins
Albuquerque, New Mexico

*Defendant pro se*

-- and --

Helen Smith
Albuquerque, New Mexico

*Defendant pro se*

-- and --

Melanie Hubka
Albuquerque, New Mexico

*Defendant pro se*

Santiago Piza Cossio
Modrall Sperling
Albuquerque, New Mexico

-- and --

Spencer L. Edelman
Modrall, Sperling, Roehl, Harris, & Sisk, PA
Albuquerque, New Mexico

*Attorneys for Defendant State Bar of New Mexico*